FILED

2012 SEP 25 PM 1:40

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DC COMICS,

        Plaintiff,

v.

REGINAL B. JONES d/b/a SUPERMEN
FADES TO FROS d/b/a SUPERMEN'S
FADES TO FRO'S d/b/a FADES TO
FRO'S d/b/a SUPERMAN PRO
BARBERSHOP, and SUPERMEN FADES
TO FROS, LLC d/b/a SUPERMEN FADES
TO FROS,

        Defendants.

_____/

Case No.: 6:12CV1456-ORL-28GJK

Complaint Seeking
Permanent Injunction,
Damages, Attorneys' Fees
and Costs

## COMPLAINT

Plaintiff DC Comics by and through its undersigned attorneys, Holihan Law, alleges for its Complaint as follows:

### INTRODUCTION

1.    This action is filed to combat the Defendants' willful use of Plaintiff's trademarks, and includes claims for federal trademark infringement, false designation of origin and unfair competition as well as related claims under Florida law.

2.    Plaintiff seeks a Permanent Injunction, damages, costs, and attorneys' fees as authorized by the Lanham Act and Florida's common law.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as the Plaintiff's cause of action arises under the Federal Trademark Act ("The Lanham Act of 1946"), 15 U.S.C. § 1051 et seq. Further, this Court has supplemental jurisdiction over Plaintiff's Florida state statutory and common law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper within the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## THE PARTIES

### Plaintiff

5. Plaintiff, DC Comics (hereinafter referred to as "DC" or "Plaintiff") is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York.

   A. DC is one of the largest and most well known publishers of comic magazines in the world. Among DC Comics' most well-known and highly successful characters are "Batman," "Superman," and "Wonder Woman" (hereinafter collectively referred to as "DC Characters").

   B. Superman first appeared in publications at least as early as April 1938. Numerous related characters, including "Clark Kent," "Lois Lane," and "Lex Luthor," as well as other popular characters, were soon introduced to the

public (Superman, related characters and indicia are hereinafter collectively referred to as the "Superman Characters").

C. Since their introductions, the Superman Characters have been featured in many formats, including movie serials, newspaper comic strips, radio shows, animated television series, live action television series, animated motion pictures, live action motion pictures and stage productions, among others. These appearances have expanded the popularity of the Superman Characters beyond the comic book medium and market.

D. The Superman Characters have also appeared in numerous theatrical motion pictures since their introduction. The most recent theatrical motion picture featuring the Superman Characters, "Superman Returns," was released on June 28, 2006, and generated over $200 million dollars in domestic box office receipts and over $190 million dollars in international box office receipts. The Superman Characters have also been featured in numerous other theatrical motion pictures, including a series of four motion pictures starring Christopher Reeve: "Superman, the Movie," "Superman II," "Superman III" and "Superman IV: The Quest for Peace;" that collectively generated over $750 million dollars in worldwide box office receipts. The Superman Characters are also the subject of a forthcoming major motion picture entitled *Man of Steel*, scheduled for release by Warner Bros. on June 14, 2013. The DC Characters include all of the Superman Characters

E. Revenues generated from products and services using the DC Characters sold in the United States are substantial. The appearance and other features of the DC Characters are inherently distinctive and serve to identify DC and its licensees as the source of products and services bearing the DC Characters.

F. DC owns all right, title, and interest in and to and holds exclusive right to develop, manufacture, market, and sell products and services bearing the trademark, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating the DC Characters (hereinafter "DC Trademarks"). DC adopted one or more of the DC Trademarks for diverse articles and registered such trademarks with the United States Patent and Trademark Office. Some, but not all of the DC Trademarks related to the Superman Characters are indexed as Exhibit A. Each year DC spends significant sums of money to develop and maintain the considerable goodwill it enjoys in the DC Trademarks and in its reputation for high quality.

Defendants

6. Defendant, Reginal B. Jones d/b/a Supermen Fades to Fros d/b/a Supermen's Fades to Fro's d/b/a Fades to Fro's d/b/a Superman Pro Barbershop (hereinafter referred to as "Jones") is an individual doing business in the State of Florida and in this District and who, upon information and belief is the owner and controlling force behind the businesses known as Supermen's Fades to Fro's, located at 501 East Kennedy Boulevard, Eatonville, FL 32751 and Supermen Fades to Fros

located at 543B W. New England Avenue, Winter Park, FL 32789, LLC and who, upon information and belief resides at 6958 Knightswood Drive, Orlando, FL 32818.

7. Defendant Supermen Fades to Fros LLC d/b/a Supermen Fades to Fros (hereinafter "Fades to Fros") is a Florida limited liability company whose principal place of business is 543B W. New England Avenue, Winter Park, FL 32789.

8. Defendants, Jones and Fades to Fros will hereinafter be collectively referred to as "Defendants".

## INFRINGING CONDUCT

9. Defendants utilize the business names "Supermen's Fades to Fro's," "Supermen Fades to Fros" and "Superman Pro Barbershop" in conjunction with the offering for sale and sale of hair grooming services (hereinafter referred to as the "Infringing Barbershops"). The Infringing Barbershops are operated at 501 E. Kennedy Boulevard, Eatonville, FL 32751 and 543B W. New England Avenue, Winter Park, FL 32789.

10. As part of the advertising and marketing of the Infringing Barbershops, Defendants utilize outdoor signage that incorporates the DC Trademarks (hereinafter referred to as the "Infringing Signage"). *See* Exhibit B. Additionally, Defendants market, advertise and solicit business for the Infringing Barbershops through a website which incorporates the DC Trademarks, which website is located at http://www.supermenfadestofros.com. As part of the Defendants' marketing and advertising, barbers at the Infringing Barbershops wear

5

shirts and aprons and use barber capes that incorporate the DC Trademarks. *See* Exhibit C. Finally, Defendants also utilize signage in the form of a vehicle wrap that incorporates the DC Trademarks. *See* Exhibit D. Defendants' signage, vehicle wrap and Internet advertisements that incorporate the DC Trademarks will be collectively referred to as the "Infringing Promotions".

11. DC has never at any time authorized Defendants to utilize the Infringing Promotions in conjunction with any barbershop business and/or the sale or offer for sale of hair grooming services.

12. Defendants have ignored DC's lawful demands and continue to utilize the Infringing Promotions in conjunction with the Infringing Barbershops.

13. Defendants are using the Infringing Promotions intentionally with a bad faith intent to profit from them.

14. Defendants' use of the Infringing Promotions is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendants' Infringing Barbershops with DC or as to the origin, sponsorship, or approval of Defendants' Infringing Barbershops and/or services by DC.

15. Defendants' use of the Infringing Promotions blurs the unique association which has heretofore existed between the DC Trademarks and the goods and service sold and offered by DC, thereby lessening the capacity of the DC Trademarks to identify and distinguish the goods and services offered by DC.

16. DC has made repeated requests that Defendants cease and desist from these infringing activities. Despite these requests, Defendants continue to utilize and maintain the Infringing Promotions in the marketing, advertising and solicitation of the Infringing Barbershops. Defendants have performed the complained of acts willfully and with knowledge of the infringement, dilution and unfair competition they would cause and to appropriate and unfairly trade upon the DC Trademarks.

17. By reason of Defendants' acts alleged above, DC has and will continue to suffer damage to its business, reputation and goodwill, and Defendants have and will enjoy profits to which they are not entitled, for which DC is entitled to relief.

18. By reason of Defendants' acts alleged above, Defendants threaten to continue to do the acts complained of herein and unless restrained and enjoined, will continue to do so, all to DC's irreparable harm.

COUNT I - TRADEMARK INFRINGEMENT

19. Plaintiff, DC, brings the following claim of trademark infringement against Defendants and incorporates by reference paragraphs 1 through 18 and brings the following claim for trademark infringement pursuant to 15 U.S.C. § 1114 against Defendants.

20. DC owns the trademark rights to those trademarks indexed on Exhibit A. All of the trademark registrations are in full force and effect and are owned by DC. Many of the trademarks are incontestable pursuant to 15 U.S.C. § 1065.

21. DC, or those under its authority, manufacture and distribute all of its advertising, products and services in conformity with the provisions of United States Trademark law.

22. Notwithstanding DC's well-known and prior common law and statutory rights in the DC Trademarks, Defendants have, with actual and constructive notice of DC's federal registration rights, and long after DC established its rights, adopted and used the DC Trademarks in conjunction with the Infringing Barbershops in the State of Florida and interstate commerce.

23. Defendants have utilized the Infringing Promotions bearing the DC Trademarks without DC's authorization. Defendants' use of the Infringing Promotions bearing the DC Trademarks in Florida and interstate commerce has and will cause the likelihood of confusion, deception, and mistake in that the buying public will conclude that the barbershop business and/or hair grooming services offered by Defendants are authorized, sponsored, approved, or associated with DC.

24. Said acts of infringement will cause irreparable injury to DC if Defendants are not restrained by the Court from further violation of DC's rights, as DC has no adequate remedy at law.

25. DC has suffered damages as a result of Defendants' acts.

26. Defendants' use in commerce of the DC Trademarks in conjunction with the Infringing Promotions is an infringement of DC's registered trademarks in violation of 15 U.S.C. § 1114(1).

27. Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure DC and its business.

## COUNT II – FALSE DESIGNATION OF ORIGIN

28. Plaintiff, DC, brings the following claim against Defendants and incorporates by reference allegations 1 through 18, 20 through 27 above.

29. As a direct result of DC's longstanding use, sales, advertising, and marketing, the DC Trademarks have acquired a secondary and distinctive meaning among the public who have come to identify the DC Trademarks with the DC and its products and services.

30. The Infringing Promotions utilized by Defendants to advertise and promote their Infringing Barbershops, that duplicate and appropriate the DC Trademarks, has and will delude and confuse the public into believing that DC approved, authorized, or sponsored the Infringing Barbershops, Infringing Promotions and related services sold, offered for sale, or distributed by Defendants.

31. Defendants, by misappropriating and using the likenesses of the DC Trademarks through the use of the Infringing Promotions in connection with the Infringing Barbershops, is misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their barbershop business and/or hair grooming services. Defendants have operated the Infringing Barbershops and offered for sale the infringing hair grooming services into interstate

commerce willfully with full knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing that the Infringing Barbershops are authorized or emanate from DC.

32.  These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

33.  Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

34.  DC has suffered monetary damages as a result of Defendants' acts.

### COUNT III – VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

35.  DC incorporates by reference the allegations set forth in paragraphs 1 through 18, 20 through 27 and 29 through 34.

36.  Defendants' acts as plead herein are in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

37.  Defendants have registered, trafficked in and used the http://www.supermenfadestofros.com domain name, which incorporates and is confusingly similar to and dilutive of the DC Trademarks, with a bad faith intent to profit from the DC Trademarks.

38.  DC has sustained irreparable harm and, unless Defendants are enjoined, DC will continue to sustain irreparable harm as a result of Defendants' wrongful conduct in violation of 15 U.S.C. § 1125(d)(1)(A).

## COUNT IV - DILUTION IN VIOLATION OF FLA. STAT. § 495.151

39. Plaintiff, DC, brings the following claim against Defendants and incorporates by reference allegations 1 through 18, 20 through 27, 29 through 34 and 36 through 38 above.

40. The infringing, unauthorized, and unlawful acts of Defendants as alleged above have and will continue to have the effect of diluting the distinctive quality of the DC Trademarks. Said acts constitute an unlawful dilution of DC's rights at common law and under the Florida Anti-Dilution Statute, Fla. Stat. § 495.151.

41. Defendants' commercial exploitation of the DC Trademarks in conjunction with the Infringing Barbershops will cause confusion in the marketplace regarding the sponsorship and origin of such barbershop business and/or hair grooming services and will tarnish DC's reputation in the marketplace.

42. DC has no adequate remedy at law and has suffered irreparable harm and damage as a result of Defendants' acts. DC will continue to suffer irreparable harm and damage as a result of Defendants' acts unless injunctive relief is granted as prayed for herein.

## COUNT V - UNFAIR COMPETITION UNDER FLORIDA'S COMMON LAW

43. Plaintiff, DC, repeats and realleges paragraphs 1 through 18, 20 through 27, 29 through 34, 36 through 38 and 40 through 42 of this Complaint.

44. DC has expended significant sums of money in advertising and marketing products and services featuring its DC Trademarks and in creating a consumer demand for such services and products in Florida and elsewhere in the United States. Consequently, these services and products have become widely known and accepted.

45. Defendants are utilizing the DC Trademarks in connection with the advertising and marking of their Infringing Barbershops thereby passing such services off as services authorized by DC.

46. Defendants have knowingly and willfully appropriated the DC Trademarks in an effort to create the impression that the Infringing Barbershops are sanctioned by DC and to misappropriate all of the goodwill associated with the DC Trademarks.

47. Defendants' acts, as described above, constitute unfair competition and will, unless enjoined by this Court, result in the destruction and/or dilution of the goodwill in the DC Trademarks and of DC's valuable trademark rights to unjust enrichment of Defendants.

48. The Infringing Promotions utilized by Defendants in conjunction with the Infringing Barbershops are calculated and likely to deceive and mislead the purchasers who buy Defendants' hair grooming services in the belief that they originate with or are authorized by DC.

49. The continued passing off by Defendants of such unauthorized barbershop business and/or hair grooming services as if such services originated from DC have caused and, unless restrained, will continue to cause serious and irreparable injury to DC.

50. DC has no adequate remedy at law and suffers irreparable harm as a result of Defendants' acts.

51. DC has suffered damages as a result of Defendants' acts.

52. Defendants committed the alleged acts intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure DC and its business.

PRAYER FOR RELIEF

WHEREFORE, DC demands entry of a judgment against Defendants as follows:

1. Permanent injunctive relief restraining each of the Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them from:

a. further infringing upon the DC Trademarks, and licensed trademarks by displaying any artwork or signage and/or related solicitations bearing unauthorized imitations of the DC Trademarks, or bearing a design or image which is of a substantially similar appearance to any of the DC Trademarks;

b. further infringing upon the DC Trademarks and licensed trademarks by registering any business name or business entity with any government licensing authority which is substantially similar to any of the DC Trademarks;

c. from passing off, inducing or enabling others, to produce or pass off as authentic any service, including barbershop services, in conjunction with the DC Trademarks so as to suggest that such services are being authorized or produced by DC or are being authorized or produced under the control or supervision of DC or approved by DC;

d. from committing any act calculated to make the purchasing public believe that the Defendants' services are under the control and supervision of DC, or are sponsored, approved or guaranteed by DC, or are connected with and provided under the control or supervision of DC;

e. from diluting and infringing the DC Trademarks and damaging their goodwill;

f. from effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs a. through e.;

g. from secreting, destroying, altering, removing, or otherwise dealing with the Infringing Promotions or any books or records that may contain any information relating to the Infringing Promotions; and

   h. from aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon any of the DC Trademarks.

  2. Directing that the Defendants deliver for destruction any and all Infringing Promotions bearing unauthorized simulations, reproductions, counterfeits, copies or colorable imitations of the DC Trademarks, or bearing a design or image which is of a substantially similar appearance to any of the DC Trademarks, including but not limited to physical signage, marketing materials or other advertisements.

  3. Directing that Defendants remove any and all Infringing Promotions and/or artwork bearing unauthorized simulations, reproductions, counterfeits, copies or colorable imitations of the DC Trademarks or bearing a design or image which is of a substantially similar appearance to any of the DC Trademarks.

  4. Directing that Defendants cancel any and all business names with the appropriate licensing authority which contain any of the DC Trademarks or service marks;

  5. Directing that Defendants immediately cease using and claiming ownership of the registration of the http://www.supermenfadestofros.com domain name, and shall immediately request HostGator to transfer the domain name registration to DC. Such Order shall further direct Defendants to sign all appropriate paperwork and take all required actions by HostGator to effectuate the transfer.

6. If HostGator delegates complete control regarding the disposition of the registration and use of the http://www.supermenfadestofros.com domain name to this Court, that said domain name registration be ordered to be cancelled and transferred to DC and that DC be ordered to notify HostGator of this.

7. Directing that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with paragraphs 1 through 6 above.

8. Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that DC authorized or is related in any way to any services distributed, sold, or otherwise circulated or promoted by Defendants.

9. That DC be awarded from each Defendant utilizing the Infringing Promotions and operating the Infringing Barbershops three times the Defendants' profits, after an accounting, pursuant to 15 U.S.C. § 1114 and § 1117.

10. That DC be awarded from each Defendant offering services bearing DC's trademarks three times such Defendant's profits there from, after an accounting pursuant to 15 U.S.C. § 1125(a) and § 1117.

11. That DC be awarded its reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. § 1117.

12. That DC be awarded its costs in bringing this action.

13. That DC be awarded other such relief as this Court deems just.

Dated this 20th day of September, 2012.
24/12

_____
Michael W. O. Holihan
Florida Bar No.: 0782165
Hailey Peterson
Florida Bar No.: 0060026
Holihan Law
1101 North Lake Destiny Road
Suite 275
Maitland, Florida 32751
Telephone: 407-660-8575
Fax: 407-660-0510
michael.holihan@holihanlaw.com
hailey.peterson@holihanlaw.com
Attorneys for Plaintiff